

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-188-CV

PAUL FRIEDMAN AND                                    APPELLANTS
SUSAN FRIEDMAN

V.

THE GLADNEY CENTER AND                               APPELLEES
THE PARTY DOING BUSINESS AS
EDNA GLADNEY CENTER

------------

### FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In four issues, Appellants Paul and Susan Friedman ("Paul," "Susan," and collectively, "Friedmans") challenge the trial court's order granting summary judgment for Appellees, The Gladney Center and The Party Doing Business as

---

[1] *See* Tex. R. App. P. 47.4.

Edna Gladney Center (collectively "Gladney"). Specifically, the Friedmans claim that a genuine issue of material fact exists as to both their negligence and fraud claims. We affirm.

## II. Factual and Procedural History

In 1979, Paul and Susan applied to Gladney, a private adoption agency, for an infant to adopt and raise as their own. During a pre-placement office interview, the Friedmans discussed the child they would like to have. The conversation is reflected in the notes taken by a Gladney case worker:

> Mr. and Mrs. Friedman are accepting of a baby of either sex. They have asked that we not consider them for twins or a baby that is not similar to the nationality of their own. They are accepting of a planned outside delivery, a baby with a minor correctible [sic] problem and are not concerned with the age of the biological mother. They are not accepting of a baby with a major problem. They are not accepting of epilepsy or juvenile diabetes in the medical background of an infant but are accepting of senile diabetes, allergies and asthma. They are accepting of marijuana experimentation and showed a great deal of hesitancy toward any other drug experimentation, particularly if it is after conception of a child. *They are accepting of an unknown father. They have asked that we not consider them for an infant whose biological mother is schizophrenic or where there is a family member who is schizophrenic*. [Emphasis added.] [2]

---

[2] According to the Friedmans, however, they expressed to Gladney, on more than one occasion, that they did not want a child whose parents had *any*

2

On September 27, 1979, a mother in the Gladney program gave birth to a boy. Shortly thereafter, the Friedmans adopted the child and named him Mark. According to the Friedmans, Gladney told them that there was no evidence of psychological or emotional problems in Mark's birth parents. However, from an early age, Mark was defiant towards the Friedmans and exhibited rage, anger, and an unwillingness to cooperate. Various doctors diagnosed Mark with major depression, impulse control disorder, ADHD, dysgraphia,[3] and a difficulty with processing visual sensory input.

In 1993, as a result of Mark's severe psychological and behavioral issues, the Friedmans sent a letter to Gladney requesting any additional information they might have on Mark.[4] In response, Gladney provided the Friedmans with

"emotional, psychiatric or psychological problems" in their backgrounds. [Emphasis added.]

[3] Dysgraphia is a deficiency in the ability to write, regardless of the ability to read, not due to intellectual impairment.

[4] The following is an excerpt from the Friedmans' letter:

> Our son Mark was born on September 27, 1979. He is now thirteen and a half years old. From the age of three, when he first started pre-school, he has had increasing difficulties. His primary problem, which has been very well diagnosed by experts in the Philadelphia area, is a major attention deficit disorder. Though not hyperactive at all, Mark is on a large dosage of medication (ritalin and clonidine) daily in order to help him succeed in school and with other areas of his life.

3

Mark's hospital notes.  Then, in August 2006, after receiving permission from Mark's birth mother, Gladney provided the Friedmans with the birth mother's counseling records that had been in Gladney's possession since 1979.

The Friedmans sued Gladney for fraud and negligence in February 2007, claiming that if Mark's birth mother's records had been disclosed to them in 1979, they never would have adopted Mark.  In response to the Friedmans' claims, Gladney filed a motion for summary judgment on both traditional and no evidence grounds.  In its traditional motion, Gladney moved for summary judgment on the ground of limitations.  In its no evidence motion for summary judgment, Gladney argued that the Friedmans had no evidence of duty, breach of duty, or causation.  The trial court granted Gladney's motion in its entirety and dismissed the Friedmans' claims with prejudice. This appeal followed.

### III.  Summary Judgment

Here, the trial court's order granting summary judgment does not specify the basis for its ruling.  Therefore, because Gladney moved for summary

---

> During his very early years of education, we went from school to school until the problem was finally diagnosed. . . .  He is experiencing great difficulties. We are seeking any kind of help we can find. . . .  If you have any information at all that has been added to Mark's records by his birth parents, we would very much appreciate you sharing it with us.

judgment on both traditional and no evidence grounds and the trial court did not specify the grounds on which it was granted, we will uphold the summary judgment if any one of the grounds advanced in the motion is meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court's judgment under the standards of rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the appellant failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether appellee's summary judgment proof satisfied the less stringent rule 166a(c) burden. *Id*.

## A. No Evidence Summary Judgment Standard of Review

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 207 (Tex. 2002). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P.

5

166a(i) & cmt.; *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002).

When reviewing a no evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan,* 199 S.W.3d 291, 292 (Tex. 2006). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no evidence summary judgment is not proper. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied). We review a no evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

### 1. Negligence

In Gladney's no evidence motion for summary judgment, it alleged that the Friedmans offered no evidence of duty, breach of duty, or causation to support their negligence claim.[5] Specifically, according to Gladney's no evidence motion for summary judgment, the Friedmans failed to identify any

---

[5] The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach. *See IHS Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).

regulation, statute, internal policy, or standard of care that would have required, or created a duty for, Gladney to disclose Mark's birth mother's counseling records to the Friedmans at the time of the adoption. In response, the Friedmans argued that Gladney's duty arose when they departed from the standard of care. The Friedmans claimed that a reasonable adoption agency, under the same or similar circumstances, would not have told the Friedmans that they had all the information when, in fact, they did not.

On appeal, Gladney reemphasizes that the Friedmans failed to offer any evidence showing that Gladney had an affirmative duty to disclose the birth mother's records to the Friedmans. Based on the record before us, we agree.

The Friedmans failed to provide any summary judgment evidence in their response regarding the standard of care at the time of Mark's adoption and therefore failed to produce evidence that Gladney departed from that standard of care. Furthermore, the Friedmans failed to identify any licensing requirement, regulation, statute, or internal policy in existence at the time of the adoption that would have required Gladney to disclose Mark's birth mother's counseling records to them based upon the Friedmans' specifications at the time of the adoption, or in their 1993 request. Therefore, because the

7

Friedmans did not provide any summary judgment evidence as to Gladney's duty, we overrule the Friedmans' third issue.[6]

### 2. Fraud

Gladney further alleged in its no evidence motion for summary judgment that the Friedmans failed to provide evidence of Gladney's intent to deceive as required in a cause of action for fraud.[7] In response, the Friedmans produced evidence that: 1) they had informed Gladney, before the adoption, that they were very adamant about not having a child with any evidence of psychological or emotional problems; 2) when Gladney notified them that there was a baby ready for placement, they specifically asked again if there was any evidence of psychological or emotional problems and were told by a Gladney representative that the baby did not have any; 3) when the Friedmans went to pick Mark up from the Gladney Center, they were handed a folder with his information and

---

[6] Because we determine that Gladney did not have a duty to disclose the birth mother's information to the Friedmans, we need not address the Friedmans' second issue pertaining to causation. *See* Tex. R. App. P. 47.1.

[7] The elements for a fraud cause of action are that: (1) a material representation was made; (2) it was false; (3) the speaker knew it was false when made or made it recklessly without any knowledge of the truth and as a positive assertion; (4) he made it with the intention that it be acted upon by the other party; (5) the party acted in reliance upon it; and (6) there were damages. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992).

8

told that the information in the folder was all the information that Gladney had on Mark; and 4) Gladney had in its possession, since before the adoption, records on Mark's birth mother.

On appeal, Gladney reasserts that the Friedmans failed to raise a genuine issue of material fact as to Gladney's intent to deceive the Friedmans. Based on the record before us, we agree.

The Friedmans argue that Gladney's intent to deceive can be inferred from the fact that Gladney told them a direct untruth as to whether there was evidence of psychological problems on the part of Mark's birth mother. They further argue that Gladney knew at the time of the adoption that the Friedmans would not have adopted Mark had they known the whole truth. However, the Friedmans failed to raise a genuine issue of material fact as to what information in the records would have put Gladney on notice that Mark's birth mother had psychological problems.[8] Instead, the Friedmans claimed only that had they known what was in the records at the time of Mark's adoption, they would not have adopted him.[9] That is not enough. The question is not whether the

---

[8] Gladney, on the other hand, designated three experts that pointed to evidence in the record that the birth mother's psychological testing and personal counseling notes do not indicate any form of psychopathology.

[9] The Friedmans' argument centered mainly around Mark's birth mother's MMPI results. Specifically, Paul claimed that "if we had seen the

9

Friedmans would have adopted Mark had they seen the records but instead whether there was evidence that Gladney knew Mark's birth mother had psychological problems and therefore intended to deceive the Friedmans by withholding the information.

Because the Friedmans failed to offer any evidence that Gladney knew Mark's birth mother's counseling records showed a history of psychological problems, they failed to raise a genuine issue of material fact as to Gladney's intent to deceive. Accordingly, we overrule the Friedmans' fourth issue.[10]

## IV. Conclusion

Having overruled or otherwise disposed of all four of the Friedmans' issues, we affirm the trial court's order granting summary judgment.

BOB MCCOY
JUSTICE

PANEL: DAUPHINOT, WALKER, and MCCOY, JJ.

---

MMPI, regardless of any other person seeing the MMPI, we definitely would not have adopted Mark."

[10] Because we determine that the Friedmans failed to offer any evidence of a genuine issue of material fact as to their negligence and fraud claims, we need not address the Friedmans' first issue pertaining to limitations. *See* Tex. R. App. P. 47.1; *Ford Motor Co.*, 135 S.W.3d at 600.

10

DELIVERED: February 12, 2009